UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TAMIKA SCHMIDT,

     *Plaintiff*,

v.

PENNYMAC LOAN
SERVICES, LLC, and
BANK OF AMERICA, NA,

     *Defendants*.

_____/

CASE NO. 1:14-CV-14728

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. Recommendation

Before the Court are Defendants PennyMac's and Bank of America's motions to dismiss (Docs. 8, 9.) Plaintiff Tamika Schmidt has brought separate claims against each Defendant, originally filing the case in the Saginaw County Circuit Court. (Doc. at Pg ID 9-12.) She alleges that PennyMac violated Regulation X's continuity of contact requirements, 12 C.F.R. § 1024.40, promulgated by the Consumer Financial Protection Bureau ("CFPB") under the Real Estate Settlement Procedures Act of 1974, ("RESPA") 12 U.S.C. § 2601 *et seq.*, and that Bank of America committed the state law tort of silent fraud. (Doc. 1 at Pg ID 14-18.) PennyMac removed the case to this Court citing the federal question raised by Schmidt's Regulation X claim and the supplemental jurisdiction covering the state claim. (*Id.* at Pg ID 1-3.) The motions have been fully briefed and are ready for Report & Recommendation without oral argument. I suggest that Schmidt lacks a private cause of action to enforce the federal regulation and that her state law claim should be remanded. Therefore, I recommend GRANTING PennyMac's motion

(Doc. 8), DENYING Bank of America's motion (Doc. 9), and remanding the remaining claim to Saginaw County Circuit Court.

## II.  Introduction

Schmidt's case arises from an agreement she entered with Executive Mortgage of Michigan LLC in May 2010 in which she executed a promissory note for $41,047 and mortgaged her real property located in Saginaw Michigan. (Doc. 1 at Pg ID 12-13; Doc. 9, Exs. A-B.) In October 2011, Executive Mortgage of Michigan assigned the mortgage to Bank of America. (Doc. 9, Ex. C.) A year later, Bank of America and Schmidt agreed to a Home Affordable Modification Trial Period Plan requiring Schmidt to make payments on the first of the month from December 2012 through February 2013. (*Id.*, Exs. C-D.) The Plan stated that "Time is of the Essence" in making the payments (*id.*, Ex. C (emphasis omitted)), and the accompanying cover letter informed Schmidt that she could pay by mail or telephone. (*Id.*, Ex. D.)

Schmidt asserts that she made the first payment on time and that in February, with the deadline impending, she attempted to make her payment at the local Bank of America branch. (Doc. 1 at Pg. ID 13-14.) According to Schmidt, the bank teller could not find any modified payment plan "in their system and . . . [would] not accept anything less than the full payment amount." (*Id.* at Pg ID 14.) The following day she mailed the modified payment to Bank of America, "but it was returned as being one . . . day late." (*Id.*) Negotiations with Bank of America proved fruitless and she was told her only options were reinstating the original loan or applying for another modification. (*Id.*) By January 2014, Bank of America had assigned the mortgage to PennyMac (Doc. 9, Ex. F), and Schmidt began calling its loss mitigation department. (Doc. 1 at Pg ID 14.) She contends that from December 2013 to February 2014 she "made numerous attempts" to contact that department "but was transferred from person to

person" and "could never get through to a contact at Pennymac [sic] that could provide her any information or options." (*Id.*) The mortgage contained a power of sale clause (Doc. 9, Ex. B), that PennyMac used in February 2014 to foreclose on Schmidt's property and purchase it at the subsequent sheriff's sale. (Doc. 8, Ex. 1.) The statutory redemption period expired six months later in August, Mich. Comp. Laws § 600.3240, without Schmidt redeeming the mortgage, (Doc. 1 at Pg ID 14; Doc. 9 at 3), and thus the deed vested in PennyMac. Mich. Comp. Laws § 600.3236.

In October 2014, Schmidt brought suit in Saginaw County Circuit Court against Bank of America and PennyMac, alleging separate claims against each. (Doc. 1.) She claims that Bank of America committed silent fraud by failing to disclose that her loan modification payments would not be accepted at the branch office. (*Id.* at Pg ID 15.) The silence was reasonably misleading because Schmidt had made multiple payments at the office prior to the modification agreement, and she "acted in reliance on the misimpression created by Defendant" that she could continue doing so. (*Id.*) As for Bank of America, she contends that it violated the Consumer Finance Protection Bureau's ("CFPB") Regulation X dealing with mortgage servicing, specifically 12 C.F.R. § 1024.40 requiring servicers to establish policies that will make personnel available by telephone to assist delinquent borrowers. (Doc. 1 at Pg ID 16-17.) During her attempts to discuss those options with PennyMac in late 2013 and early 2014, she asserts that she "was unable to ever speak to the same person twice." (*Id.* at Pg ID 17.) Instead, PennyMac "transferred [her] from department to department to people who were supposed to 'help' her, but [she] was never given answers to her very simply questions," and PennyMac never received return calls despite promises that someone would contact with answers. (*Id.*)

PennyMac was served with the complaint on November 17, 2014, and within thirty days removed the case to this Court under 28 U.S.C. § 1441. (*Id.* at Pg ID 1-4, Ex. A.) The basis for removal was the Court's original federal question jurisdiction, 28 U.S.C. § 1331, over Schmidt's Regulation X claim. (*Id.* at Pg ID 2-3.) The state law claim against Bank of America came within the Court's supplemental jurisdiction, according to PennyMac's removal notice. (*Id.* at 3.) Bank of America apparently did not give explicit consent to removal, as the notice indicates by stating that "upon information and belief, co-defendant Bank of America, N.A. would agree to removal." (*Id.*) Bank of America never subsequently filed written consent to the removal as required by 28 U.S.C. § 1446(b).

### III. <u>Analysis</u>

#### A. Motion to Dismiss Standards

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and will be granted if the plaintiffs have failed "to state a claim upon which relief can be granted . . . ." "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action . . . ." *Id.*

4

Because the dismissal standard scrutinizes the pleadings, the Federal Rules limit courts'

consideration of extraneous materials at this stage. Rule 12(d) provides the operative language:

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

The "pleadings" the rule refers to are seven narrow classes of documents defined in Rule 7(a).

Motions and accompanying briefs are not pleadings, nor are responses to motions or other

submitted memoranda. Fed. Rule Civ. P. 7(a). *See also Moore v. Trott & Trott, P.C.*, No. 06-

11250, 2006 WL 3103671, at *1 n.1 (E.D. Mich. Oct. 31, 2006) (adopting Report and

Recommendation); *Miller v. Brown & Williamson Tobacco Corp.*, 679 F. Supp. 485, 487 (E.D.

Pa. 1988); *United States v. Plant*, 56 F.R.D. 613, 616 (W.D. Ark. Oct. 19, 1972); *Wholesale

Supply Co. v. South Chester Tube Co.*, 20 F.R.D. 310, 315 (E.D. Pa. Feb. 14, 1957). It follows

that the plaintiffs' pleadings, and not their briefs, must contain the core legal contentions for the

claims advanced. *See Fifth Third Bank v. Double Tree Lakes Estates, LLC*, No. 2:11-CV-233,

2013 WL 587891, at *11 (N.D. Ind. Feb. 12, 2013) (noting that "all allegations of a claim of

fraud must be in the pleading itself and cannot be supplemented by a responsive brief").

Courts deluged with these outside "matters" can either exclude the materials and proceed

under Rule 12(b)(6) or convert the motion. *See Brigolin v. Blue Cross Blue Shield of Michigan*,

516 F. App'x 532, 536 (6th Cir. Mar. 4, 2013). Many courts have excluded such materials and

considered the motion to dismiss without reference to them. *See, e.g.*, *In re Fagan*, 465 B.R. 472,

475 (E.D. Mich. Bankr. 2012) ("The Court will exclude the materials supplied by the debtors and

treat the Defendant's motion solely as a motion to dismiss under Rule 12(b)(6)."); *Warsco v.

Becton Dickinson & Co.*, No. 1:08-CV-5, 2009 WL 1874375, at *3 (N.D. Ind. June 30, 2009)

(noting that court has discretion to exclude or convert). Using the materials to decide a motion to

dismiss constitutes error and sometimes leads to reversal. *See Engleson v. Unum Life Ins. Co. of America*, 723 F.3d 611, 616 (6th Cir. 2013) (noting that district court should have converted because it considered outside materials, but treating the decision as equivalent to a Rule 56 ruling and reviewing under that standard); *Brigolin*, 516 F. App'x at 536 (same).

However, the Rules allow courts to consider certain extrinsic documents at the dismissal stage. Pertinent to the present case, the Court can examine documents Defendants have attached to their motions to dismiss "'if they are referred to in the plaintiff's complaint and are central to her claim.'" *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) Both conditions— reference in the complaint and centrality to the complaint—are necessary for the rule to apply. *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (analyzing whether the document was both integral to the complaint and referenced in it); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (noting that a court can consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein"); *Weiner*, 108 F.3d at 89 (same); *Berry v. Main Street Bank*, 977 F. Supp.2d 766, 771 (E.D. Mich. 2013) (same); *Griffiths v. Ohio Farmers Ins. Co.*, No. 1:09-cv-1011, 2009 WL 3817592, at *1 (N.D. Ohio Nov. 13, 2009) (same). In addition, "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Bassett*, 528 F.3d at 430. Certain limitations apply when taking judicial notice, chief among which is that the court cannot accept the truth of the matters asserted in the documents. *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

Here, Defendants have attached various documents to their motions, none of which Schmidt has opposed. The list of exhibits is comprised of a notarized sheriff's deed of the February 2014 foreclosure sale (Doc. 8, Ex. A; Doc. 9, Ex. G), the promissory note (Doc. 9, Ex. A), the agreement assigning the mortgage to Bank of America (*id.*, Ex. B), the Trial Payment Plan and accompanying cover letter (*id.*, Exs. D-E), and the assignment agreement between Defendants (*id.*, Ex. G). All of these documents are properly within the Court's purview. The complaint references each document, except the sheriff's deed, and relies on them to press its claims. (Doc. 1 at Pg ID 13-14.) The Court can also take judicial notice of the deed, along with the other materials. *See Letvin v. Lew*, No. 13-12015, 2014 WL 2865143, at *4 (E.D. Mich. June 24, 2014) (taking notice of a promissory note, mortgage, assignment of mortgage, and sheriff's deed).

### B.  Removal Procedures

At the outset, the Court briefly highlights Bank of America's questionable compliance with 28 U.S.C. § 1446(b)(2)(A), which requires "all defendants who have been properly joined and served . . . [to] join in or consent to the removal of the action." It applies where, as here, the removal is based "solely under [28 U.S.C. §] 1441(a)." *Id.* That section, in turn, allows defendants to remove any civil action brought in state court to the proper federal district court that has original jurisdiction over it. *Id.* § 1441(a). PennyMac's removal notice was premised on the court's original jurisdiction over a federal question, the Regulation X claim (Doc. 1 at Pg ID 2-3), thus triggering § 1446(b)'s requirement that all defendants consent to the removal. Courts have dubbed this the "rule of unanimity," which holds, as the Sixth Circuit explained when adopting it, that "all defendants in the action must join in the removal petition or file their consent to removal in writing within thirty days" of two alternative dates. *Loftis v. United Parcel*

7

*Serv., Inc.*, 342 F.3d 509, 516 (6th Cir. 2003). Defendants can manifest consent even without a separate writing or signature if, for example, the notice of removal states that all defendants consent to it. *See Harper v. AutoAlliance*, 392 F.3d 195, 201-02 (6th Cir. 2004). Alternatively, the defendant can demonstrate consent by filing an answer that states jurisdiction is proper in the federal court. *Id.* at 202. Opposing a motion to remand also demonstrates sufficient consent. *Cleveland v. Ameriquest Mortgage Securities, Inc.*, 615 F.3d 496, 501 (6th Cir. 2010).

The notice here did not boast that Bank of America had consented, only that PennyMac believed it would consent. (Doc. 1 at Pg ID 3.) *Cf. Schayes v. T.D. Serv. Co. of Arizona*, No. CV-10-02658, 2011 WL 1793161, at *3 (D. Ariz. May 11, 2011) (finding that PennyMac's assertion in its notice of removal that no defendant objected was insufficient); *Knickerbocker v. Chrysler Corp.*, 728 F. Supp. 460, 462 (E.D. Mich. 1990) (holding that the removing defendant's "unsupported assertion that [the co-defendant] 'does not object to the removal' clearly fails to satisfy this statutory filing requirement"). Nor does Bank of America's motion to dismiss explicitly assert that this Court has jurisdiction; rather it simply mentions the fact that PennyMac has removed the case here. (Doc. 9 at 3.) *Cf. Local Union No. 172 Int'l Ass'n of Bridge, Structural Ornamental & Reinforcing Ironworkers v. P.J. Dick Inc.*, 253 F. Supp. 2d 1022, 1025 (S.D. Ohio 2003) (noting that courts should not "allow[] a defendant's ambiguous actions, such as filing an answer which makes no reference to the removal of the case, to satisfy the clear requirements of the statute"); *Hicks v. Emery Worldwide, Inc.*, 254 F. Supp. 2d 968, 975 (S.D. Ohio 2003) (noting that "a non-removing defendant's filing of motions or pleadings in the federal court, without explicitly indicating consent to or joinder in the removal, is insufficient to satisfy the requirements of § 1446").

Ultimately, this is a procedural rule and the Court cannot *sua sponte* dispose of the case on this ground even if the rule was violated.[1] Because no party has protested removal, any arguments based on the rule of unanimity have been waived. *See Page v. City of Southfield*, 45 F.3d 128, 132-33 (6th Cir. 1995); *Barber v. Zurich Am. Ins. Co.*, No. 14-12752, 2015 WL 93530, at *1 n.1 (E.D. Mich. Jan. 7, 2015); *Luckow v. AXA Equitable Life Ins. Co.*, No. 08-CV-10475, 2008 WL 495626, at *1 (E.D. Mich. Feb. 21, 2008). Nonetheless, the absence of any explicit consent in the record provides a persuasive reason to remand, as discussed more fully below.

### C.  Schmidt's Regulation X Claim

Schmidt's lone federal claim is that PennyMac violated 12 C.F.R. § 1024.40.[2] (Doc. 1 at 16-17.) The relevant portion of that regulation requires servicers of loans to

> maintain policies and procedures that are reasonably designed to achieve the following objectives . . .

> (1) Assign personnel to a delinquent borrower . . . not later than the 45th day of the borrower's delinquency.

> (2) Make available to a delinquent borrower, via telephone, personnel assigned to the borrower as described in paragraph (a)(1) [above] of this section to respond to the borrower's inquiries, and as applicable, assist the borrower with available loss mitigation options until the borrower has made, without incurring a late charge, two consecutive mortgage payments in accordance with the terms of a permanent loss mitigation agreement.

> (3) If a borrower contacts the personnel assigned to the borrower as described in paragraph (a)(1) [above] of this section and does not immediately receive a live response from such personnel, ensure that the servicer can provide a live response in a timely manner.

---

[1] A few exceptions exist to the rule of unanimity; the only one potentially relevant here is where the non-removing defendant was not served with process when the removal was filed. *See First Independence Bank v. Trendventures, L.L.C.*, No. 07-CV-14462, 2008 WL 253045, at *5-6 (E.D. Mich. Jan. 30, 2008). Evidence regarding service on Bank of America is lacking.

[2] Nothing in the complaint suggests Schmidt is attempting to assert this claim against Bank of America as well, and Schmidt has failed to deny Bank of America's assertion that the claim applies only to PennyMac. (Doc. 9 at 3 n.3; Doc. 14.)

12 C.F.R. § 1024.40(a). This regulation took effect on January 10, 2014, in the middle of the period PennyMac was supposedly violating it. *Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)*, 78 Fed. Reg. 10,696, 10,696 (Feb. 14, 2013) (codified at 12 C.F.R. pt 1024). Thus at least some of the alleged conduct could have come under its strictures. Schmidt offers two actions that contravened the regulation: PennyMac shuffled her between different personnel when she called, none of whom answered her "very simple questions," and despite promising to contact her "with a person who could answer her questions and help her with loss mitigation efforts, Plaintiff never received a return phone call." (Doc. 1 at Pg ID 17.) In her brief, she suggests this response was designed to "continue transferring her through departments in an effort to frustrate her and get her off the phone." (Doc. 15 at 5.) No party disputes that PennyMac is a loan servicer, 12 U.S.C. § 2605(i)(2), or that Schmidt is a "delinquent borrower" under the regulation.

    As an initial matter, it is doubtful whether the complaint describes actual violations of the regulation. The regulation imposes on servicers such as PennyMac a duty to implement policies and procedures for communications with delinquent borrowers. Schmidt does not claim that PennyMac failed to enact such policies or that its actions breached those policies. She does not even claim that live personnel were unavailable. Perhaps she comes closest to properly stating a claim by asserting that none of those personnel answered her questions, but this vague contention does not clearly suffice.

    In any case, her problems characterizing the claim are symptomatic not of a poorly worded pleading but of a pleading that alleges a claim she cannot privately enforce. That is, no private cause of action is available to enforce 12 C.F.R. § 1024.40. PennyMac arrives at the same conclusion, but for the wrong reasons. (Doc. 8 at 10-11; Doc. 17 at 5-6.) It interprets the

complaint as contending that "the regulation was violated because [Schmidt] was not provided a loss mitigation option by PennyMac." (Doc. 8 at 11.) It then asserts that the next section in the regulations, 12 C.F.R. § 1024.41, does not impose any obligation on the servicer to offer loss mitigation options and that § 1024.41 does not create a private right allowing the borrower to enforce agreements between the servicer and the owner or assignee of the loan regarding loss mitigation options. (Doc. 8 at 11; Doc. 17 at 5-6.) That is an accurate recitation of § 1024.41, but it is irrelevant: Schmidt is not bemoaning the lack of loss mitigation options or trying to enforce an agreement. Rather, she details errors in PennyMac's communications practices that purportedly deviated from § 1024.40(a)'s specifications. That section's requirements address a broad range of communications extending beyond those relating to loss mitigation agreements. Indeed, the servicers must have a policy for providing personnel that can answer "the borrower's inquiries . . . ." *Id.* § 1024.40(a)(2).[3] PennyMac's emphasis on loss mitigation thus misreads the regulation and Schmidt's complaint.

Nonetheless, Schmidt does not have a private right of action to bring this particular claim. Such rights can be found only in statutes, and Schmidt cites none. As the Supreme Court explained,

> [l]anguage in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not. . . . [I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.

---

[3] PennyMac's focus on loss mitigation options might emanate from the next portion of the sentence, which adds that the personnel must "respond to the borrower's inquiries, and as applicable, assist the borrower with available loss mitigation options . . . ." *Id.* § 1024.41(a)(2). The reference to "loss mitigation options" does not modify or limit the types of inquiries the personnel must answer. Rather, it is a separate provision obligating the servicer to maintain policies under which personnel are available to assist with those options only if they apply.

*Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) (citations omitted); *see also Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993) ("[F]ederal regulations cannot themselves create a cause of action; that is a function of the legislature."). The right arises from the statute, and any "obligation or prohibition" the regulation imposes "that is not imposed generally by the controlling statute" is unenforceable by private suit. *Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 906 (6th Cir. 2004). "On the other hand, if the regulation simply effectuates the express mandates of the controlling statute, then the regulation may be enforced via the private cause of action available under that statute." *Id.* The plaintiff must be able to cite "a specific statutory provision . . . that confers a right relevant" to the violation of a regulation. *Caswell v. City of Detroit Hous.*, 418 F.3d 615, 620 (6th Cir. 2005); *see also Talton v. BAC Home Loans Servicing LP*, 839 F. Supp. 2d 896, 911 (E.D. Mich. 2012) (dismissing claim that a mortgage servicing regulation created a private cause of action where the "plaintiffs [had] not pointed to a federal statute that supports their claim"); *cf. Harris v. Olszewski*, 442 F.3d 456, 464-65 (6th Cir. 2006) ("Here, the authoritative regulation merely supplements the right identified in a specific *statutory* provision . . . ."). At most, then, the regulations applying a statute that contains a private right "are covered by the cause of action to enforce that section" since those regulations "authoritatively construe the statute itself . . . ." *Sandoval*, 532 U.S. at 284.

Congress can create rights of action in statutes by express provision or by implication. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15, 18 (1979). While the former is the "far better course," in "'certain limited circumstances the failure of Congress [to expressly create a right] . . . is not inconsistent with an intent on its part to have such a remedy available to persons benefited by its legislation.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v.*

*Curran*, 456 U.S. 353, 374 (1982) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690-91 (1979)). The Supreme Court has articulated various frameworks for finding implied rights of action, but the touchstone of all has been "determining whether Congress intended to create the private right of action," and that determination begins and often ends with the statutory language and framework. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 569 (1979). *See also Sandoval*, 532 U.S. at 288 ("We therefore begin (and find that we can end) our search for Congress's intent with the text and structure" of the statute.). An earlier case, *Cort v. Ash*, 422 U.S. 66, 78 (1975), posited factors relevant to the inquiry—such as whether the legislation sought to benefit or protect a discrete class or whether a private remedy would effectuate the statute's underlying purposes—which the Court has later instructed are designed to discern legislative intent. *Touche Ross*, 442 U.S. at 575-76. Thus, the implication of a private right of action must come from a clear indication of Congress's intent apparent from the statute's text and structure. *See Sandoval*, 532 U.S. at 287-88 (noting that the absence of "'rights-creating' language" indicated that Congress did not intend to create a private cause of action); *Lewis*, 444 U.S. at 18 ("We conclude that the statutory language itself fairly implies a right to specific and limited relief in a federal court.").

Statutes that merely direct federal agencies to issue rules and regulations rarely create private causes of action. In *Sandoval*, for example, the statute instructed the agencies "'to effectuate the provisions [§ 601] . . . by issuing rules, regulations, or orders of general applicability.'" 532 U.S. at 288 (quoting 42 U.S.C. § 2000d-1). From this, the Court could not detect any of the "'rights-creating' language so critical to the Court's analysis" in other cases finding implied rights. *Id.* For one thing, the "focus" of the statute was on "the person regulated rather than the individuals protected," indicating no "'intent to confer rights on a particular class

of persons.'" *Id.* at 289 (quoting *California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

Legislation written as a general mandate to agencies provides "'far less reason to infer a private

remedy in favor of individual persons." *Id.* (quoting *Cannon*, 441 U.S. at 690). Instead, what is

needed to create a private right is text "'phrased in terms of the persons benefited.'" *Mik v.

Federal Home Loan Mortgage Corp.*, 743 F.3d 149, 159 (6th Cir. 2014) (quoting *Gonzaga Univ.

v. Doe*, 536 U.S. 273, 274 (2002)). And even this will fail if the language does not in addition

demonstrate intent to provide a private remedy. *Geiling v. Hemlock*, No. 12-13119, 2012 WL

5265551, at *6 (E.D. Mich. Oct. 23, 2012).

The Sixth Circuit faced a statute-regulation grouping based on a broad legislative

mandate to issue regulations in *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 307-

09 (6th Cir. 2000). The plaintiff contended that the private right of action was implicit in a

statutory grant of power to the Secretary of Transportation to "prescribe regulations to establish

drug testing programs '[i]n the interest of commercial motor vehicle safety.'" *Id.* at 307-08

(quoting 49 U.S.C. § 31306). The court found that the statute provided only "a general mandate"

to promulgate regulations, and thus did not "evince a concern for the protection" of a discrete

class. *Id.* The statute therefore was not privately enforceable.

In the instant case, Schmidt has not cited any statute undergirding his right to privately

enforce his claim, nor could he. The CFPB crafted 12 C.F.R. § 1024.40 to preclude private

causes of action. The regulation's development shows why Schmidt's claim fails. The primary

statute underlying the regulation is RESPA, originally enacted in 1974 and amended in 1990 to

include section 6, which imposed new responsibilities on persons servicing a "federally related

mortgage loan." *Cranston-Gonzalez National Affordable Housing Act*, Public Law 101-625, 104

Stat. 4079, (1990) (section 941, codified at 12 U.S.C. § 2605). Among other things, that section

14

contains detailed information the servicer must provide to consumers at various times and requires the servicer to respond to a borrower's "qualified written request . . . for information relating to the servicing of [the] . . . loan." 12 U.S.C. §§ 2605(b), (c), (e). It also has an express provision for private actions: "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure" in "any action by an individual" or in a class action. *Id.* § 2605(f).

Prior to the Dodd-Frank Act of 2010, the Department of Housing and Urban Development had rulemaking authority over RESPA and developed Regulation X, 24 C.F.R. pt. 3500 (2009) to cover mortgage servicing. When the CFPB was given responsibility for RESPA rulemaking, it proposed the Continuity of Contact regulation at issue here. *2012 Real Estate Settlement Procedures Act (Regulation X) Mortgage Servicing Proposal*, 77 Fed. Reg. 57200, 57,202, 57,261-65, 57,305 (Sept. 17, 2012). The proposal stemmed from concerns that servicers "were ill-equipped to handle the high volumes of delinquent mortgages," as seen by the recent mortgage crisis. *Id.* at 57,203-204. One of the resulting problems the CFPB sought to ameliorate was servicers' often unresponsive communication practices with delinquent borrowers. *Id.* The proposed Continuity of Contact rule would have addressed this by imposing specific standards on servicers. *Id.* at 57,305. For example, it did not instruct the servicer to craft policies and procedures, but instead directly commanded that the servicer assign personnel to the borrower within five days of giving notice of delinquency. *Id.* In short, the CFPB hoped to "establish minimum staffing requirements that would apply to all mortgage servicers" and "minimum uniform national standards" that would force servicers to assign personnel to delinquent borrowers and provide "live, telephonic responses to inquiries . . . ." *Id.* at 57,261.

15

It is the statutory basis that is critical to the analysis, however, and in the proposal the CFPB relied upon legislation that arguably would have channeled a statutory cause of action through the regulation. To support its authority to enact the two relevant regulatory subsections, the CFPB cited, among other statutes, subsection 6(k)(1)(E) of RESPA, 12 U.S.C. § 2506(k)(1)(E). *Mortgage Servicing Proposal*, 77 Fed. Reg. at 57,262-63. Section 6(k) subsection listed various servicer prohibitions, and 6(k)(1)(E) in particular provided that a servicer "shall not . . . fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E). By hitching the regulation to a privately enforceable statute, the CFPB raised the possibility that it could be enforced in private actions.

In its final ruling, the CFPB backed away from this implication and, in fact, denied that the regulation provided or channeled any private right of action. The notice announcing the final ruling stated, "The Bureau and the prudential regulators will be able to supervise servicers within their jurisdiction to assure compliance with these [Continuity of Contact] requirements but there will not be a private right of action to enforce these provisions." *Mortgage Servicing Rules*, 78 Fed. Reg. at 10,698. Various modifications display and explain the shift. As noted, the language changed from a direct mandate on the servicers to a general "objectives-based policies and procedures requirement" that gave the servicers "flexibility" in achieving those objectives. *Id.* at 10,808. Subsections 1024.40(a)(1) and (2) were withdrawn, the CFPB explained, "because they [were] proposed as specific requirements," and they were replaced with a more general requirement that servicers adopt policies to further the objectives that inhered in those rejected "specific requirements." *Id.* at 10,810.

More importantly, the CFPB dropped its reliance on RESPA section 6(k)(1)(E). *Id.* at 10,808-09. The proposed regulation "would have been enforceable through private rights of action," via section 6(k)(1)(E). *Id.* at 10,808. However, the final ruling states, "the Bureau is adopting § 1024.40 as an objectives-based policies and procedures requirement. . . . [and] the Bureau believes that private liability is not compatible" with such requirements. *Id.* Explaining a similar decision regarding another section, the CFPB elaborated that "the prospect that many individual suits could be filed could threaten to undermine the basic goal of an objectives-based system" and would lead to inconsistent court rulings that would inhibit the flexibility envisioned in the regulations. *Id.* at 10,778. Consequently, "supervision and enforcement by the Bureau and other Federal regulators" would preserve "robust consumer protection without subjecting servicers to the same litigation risk and concomitant compliance costs as civil liability . . . ." *Id.*

To remove the cause of action linked to the regulation, the CFPB looked to alternative statutory authority for issuing it. No longer relying on section 6(k)(1)(E) of RESPA, the CFPB cited three different statutory sections, none of which give rise to private enforcement of the regulation's requirements. *Id.* at 10,809. The first section, 12 U.S.C. § 2617(a) provides the CFPB a general grant of authority to issue regulations "necessary to achieve the purposes" of RESPA. The second is similarly broad, listing the objectives for which the CFPB can exercise its authority. 12 U.S.C. § 5511(b). Finally, 12 U.S.C. § 5532(a) gives the CFPB power to enact regulations ensuring that disclosures made to consumers are comprehensible. All three sections are general mandates allowing the CFPB to promulgate regulations that further broad objectives. Statutes of this type do not create private causes of action. *See Sandoval*, 532 U.S. at 288-89; *Parry*, 236 F.3d at 307-08. Only the last statute, 12 U.S.C. § 5532(a), arguably hints at a class of "'persons benefited,'" *Mik*, 743 F.3d at 159 (quotation omitted), but it does not suggest a

17

remedy. *See Geiling*, 2012 WL 5265551, at *6. Nor do any of the statutes lay out the requirements the CFPB ultimately constructed. The regulation does not effectuate a privately enforceable statutory right, and consequently I suggest that Schmidt cannot rely on it to bring this claim.

### D.  Schmidt's Silent Fraud Claim

This leaves Schmidt's state law claim against a different Defendant, Bank of America. (Doc. 1 at Pg ID 15.) Bank of America raises a host of issues with the claim, including state law principles that preclude courts from overturning foreclosure sales after the statutory redemption period expires, Schmidt's failure to plead fraud with particularity, and a state law economic loss doctrine that bars the claim. (Doc. 9 at 5-10.) The initial question facing the Court is the jurisdictional basis for deciding this claim. *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 510 F. Supp. 2d 299, 305 (S.D. N.Y. 2007). PennyMac's removal asserted that the Court could exercise supplemental jurisdiction over it pursuant to 28 U.S.C. § 1367 because it is part of the same case or controversy as the federal question. (Doc. 1 at Pg ID 3.) Whether supplemental jurisdiction is proper depends on whether the "state and federal claims . . . derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966). Another consideration or factor is whether the "claims are such that [the plaintiff] . . . would ordinarily be expected to try them all in one judicial proceeding," though the federal issues must be substantial. *Id.* While this test preceded § 1367, courts recognize that the statute codifies its principles. *See City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172-73 (1997); *Barnes v. Hayse*, No. 10-12501, 2010 WL 3448377, at *1-2 (E.D. Mich. Aug. 30, 2010).

I suggest that it is ultimately unnecessary to determine this issue because remand is proper whether the Court can exercise supplemental jurisdiction or not. If supplemental

jurisdiction over the claim does not exist, then the removal statute instructs the court to remand. 28 U.S.C. § 1441(c). If such jurisdiction exists it is discretionary, and I recommend that the Court decline to exercise it and instead remand. Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Gibbs*, 383 U.S. at 726; *see also Geiling v. Wirt Fin. Servs., Inc.*, No. 14-cv-11027, 2015 WL 1529866, at *11 (E.D. Mar. 31, 2015). The statute giving courts jurisdiction over supplemental claims also recognizes that courts have discretion to decline it if, among other reasons, "the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(4). The Sixth Circuit "applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed— retaining jurisdiction 'only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues.'" *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)). Other factors that could overcome this "strong presumption" include forum manipulation, the progress of discovery, and the ripeness of summary judgment motions. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (discussing *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211-12 (6th Cir. 2004)). In the typical case, however, supplemental jurisdiction is not invoked. *See, e.g.*, *CH Holding Co. v. Miller Parking Co.*, 973 F. Supp. 2d 733, 739 (E.D. Mich. 2013) (noting that dismissal or remand of the state law claims is usually warranted).

None of the factors favor retaining the case. No forum manipulation is apparent, the case has not progressed through discovery, and remand will not result in "multiplicity of litigation," as only one claim remains. The entire dispute centers on state law issues that are more appropriately addressed by state courts. Further, the state and federal claims were lodged against

different parties and were largely based on separate facts. Though supplemental jurisdiction can extend to pendant parties such as Bank of America, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005), there is a clear division between the state law claim that allegedly arose under the modification plan, and the subsequent federal claim against PennyMac. In short, the state court on remand will not need to duplicate this Court's work. The Court has the power to remand after declining supplemental jurisdiction, and I suggest this course is appropriate here. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988); *Hinson v. Norwest Fin. South Carolina, Inc.*, 239 F.3d 611, 616 (4th Cir. 2001).

I also note that none of the parties have provided any basis for finding diversity jurisdiction over the state law claim. The "party 'seeking to bring a case into federal court carries the burden of establishing diversity jurisdiction.'" *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting *Certain Interested Underwriters at Lloyd's London, England v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994)). When that party is a removing defendant, courts have scrutinized the complaint and the notice of removal, along with other evidence, to determine whether the party has affirmatively established jurisdiction. *See Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 835-36 (S.D. Ill. 2006); *Keller v. Honeywell Protective Servs.*, 742 F. Supp. 425, 427 (N.D. Ohio 1990). Where the evidence is vague, a court cannot exercise jurisdiction. One court, for example, remanded were "it [was] simply unclear from the allegations in the Petition for Removal whether the requisite complete diversity exists." *Keller*, 742 F. Supp. at 429. Another concluded that "as currently pleaded, the allegations of [the defendant's] notice of removal are inadequate to permit the Court to ascertain whether complete diversity of citizenship exists in this case." *Lyerla*, 461 F. Supp. 2d at 836. Here, as described above, Bank of America has never explicitly consented to this Court's jurisdiction, let alone provided a basis for diversity

jurisdiction. Neither the notice of removal nor the complaint details the amount in controversy or the citizenship of the defendants. I thus suggest that diversity jurisdiction has not been shown.[4]

## IV.  Conclusion

For the reasons above, I recommend granting PennyMac's motion to dismiss (Doc. 8), denying Bank of America's motion to dismiss (Doc. 9), and remanding the case to the Saginaw County Circuit Court.

## V.  Review

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

---

[4] I recognize that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. In the absence of any argument on the matter, I will not address whether this section applies to a party who never made any "allegations of jurisdiction" or whether the allegations here are "defective" under the statute. *Cf. Brooks v. Rosiere*, 585 F. Supp. 351, 354 (E.D. La. 1984) ("There is, however, no defect in the allegations of the basis for federal jurisdiction in the removal petition which would call for amendment pursuant to section 1653. The petition clearly alleges the existence of a federal question in this case. The defect in the petition is the failure of all defendants to petition for removal in a timely manner. A defect of this nature in the removal petition is not curable by amendment under section 1653."). Additionally, no party has requested a further factual development of the issue, and the allegations, as they stand, do not merit such development. *Cf. Ski Shawnee, Inc. v. Commonwealth Ins. Co.*, No. 3:09-CV-02391, 2009 WL 4937306, at *2 (M.D. Penn. Dec. 14, 2009) (providing the parties the opportunity to present factual evidence on diversity where the defendant alleged diversity of citizenship but the pleadings rendered the matter unclear).

*Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 1, 2015                                    S/ PATRICIA T. MORRIS
                                                      Patricia T. Morris
                                                      United States Magistrate Judge

## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: May 1, 2015                          By s/Kristen Krawczyk
                                            Case Manager to Magistrate Judge Morris